UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONALD SCANLAN,

        Plaintiff,

                                        Case No. 22-cv-586-pp

   and

EMPLOYEE BENEFIT PROGRAM
OF BANK OF MONTREAL/HARRIS
*by administrator United Healthcare Services Inc.*,
and BLUE CROSS BLUE SHIELD OF ILLINOIS,

        Involuntary Plaintiff,

   v.

ADAMS MANUFACTURING COMPANY,
ABC INSURANCE COMPANY,
and DEF INSURANCE COMPANY,

        Defendants.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 28), GRANTING IN PART DEFENDANT'S MOTION TO COMPEL AND DENYING WITHOUT PREJUDICE DEFENDANT'S REQUEST FOR COSTS AND FEES (DKT. NO. 30) AND DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTION FOR PROTECTIVE ORDER (DKT. NO. 32)**

---

The plaintiff sued defendant Adams Manufacturing Company after he suffered injuries while allegedly sitting in an Adirondack-style chair manufactured by the defendant. Dkt. No. 1. On December 6, 2022, the defendant filed a motion for protective order because the parties could not agree on a paragraph that would allow the plaintiff to share "confidential and proprietary documents" produced in this case with attorneys in other cases

Case 2:22-cv-00586-PP   Filed 09/18/23   Page 1 of 23   Document 54

pending against the defendant. Dkt. No. 28 at 2. The plaintiff did not timely file a response.

On January 10, 2023, the defendant filed a motion to compel the plaintiff to respond to its September 30, 2022 discovery requests and produce responsive documents. Dkt. No. 30 at 1. The next day, the plaintiff filed a motion for an extension of time to respond to the defendant's motion for protective order. Dkt. No. 32.

Because the plaintiff has not shown excusable neglect, the court will deny the plaintiff's motion for leave to file a response to the defendant's motion for protective order. The court will grant the defendant's motion for protective order and grant in part the defendant's motion to compel.

## I. Defendant Adams Manufacturing Company's Motion for Entry of Protective Order (Dkt. No. 28)

The defendant filed a motion asking the court to enter a protective order identical to this district's template order, with an additional paragraph agreed upon by the parties regarding mediation. Dkt. No. 28 at 1. While the parties agree on what the defendant has proposed, the defendant filed the motion because the plaintiff insists on an additional paragraph that would allow the plaintiff to share confidential and proprietary documents produced in this case with the plaintiffs' attorneys in other cases filed against the defendant. Id. at 2. The defendant says that it anticipates producing proprietary financial information, trade secrets, product research and development, existing product designs and performance specifications and marketing plans. Id. It maintains that this information is highly restricted and that the documents contain highly confidential information inappropriate for distribution to third parties; it says it would be subject to significant and irreparable harm if this information were widely accessible to third parties. Id. According to the defendant, blanket

2

permission to produce the confidential and proprietary documents is wholly improper. Id. at 3. The defendant asserts that it is otherwise ready to produce in excess of 350 GB of company documents and 800 GB of employee PST files upon execution of the protective order. Id.

A. Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Protective Order (Dkt. No. 32)

The plaintiff did not timely respond to the defendant's motion for a protective order. Two weeks after his response was due, the plaintiff filed a motion for an extension of time to file a response, arguing excusable neglect. Dkt. No. 32. The plaintiff explains that the parties had agreed on all but one paragraph of the protective order; however, the defendant's "further overtures regarding the proposed protective order came during a period of time plaintiff's counsel was generally out of the office on a succession of critical depositions and meeting in another significant case." Id. at 2; Dkt. No. 32-2 at ¶¶3-5. After that, the plaintiff's attorney was "engaged in days-long compensation committee meetings, followed by complex research and settlement negotiations in a case involving the depositions, as well as with shepherding the firm through year-end financial and business arrangements and participating in family holiday celebrations." Id.; Dkt. No. 32-2 at ¶¶6-9. Counsel adds that, during the time that he was engaged in the compensation committee meetings, members of the firm were "drafting a response to a petition for review" in the Wisconsin Supreme Court and he "participated in formulating the response to the petition for review." Dkt. No. 32-2 at ¶9. He avers that he was not aware until January 10, 2023 that the motion was pending or that a response had been due on December 27, 2022. Id.; Dkt. No. 32-2 at ¶¶10, 11. He says that he "immediately arranged for one of [his] partners" to draft a response to the

motion, dkt. no. 32-2 at ¶11, and filed the motion for extension of time the next day, dkt. no. 32, with the response attached, dkt. no. 32-1.

Counsel concedes that under Rule 6(b)(1)(B), he must establish excusable neglect, but asserts that "for the purposes of this motion, that bar should not be high." Dkt. No. 32 at 4 (citing Neil Dishman, *Deadline Extensions In Federal Court: The Procrastinator's Guide*, 93 Ill. B.J. 354, 355 (July 2005) (footnotes omitted)). According to the plaintiff, the motion involves one discrete discovery issue "which is not particularly time-sensitive," the parties agreed on the form of the order with the exception of a single paragraph, discovery is in the early stages and the defendant has not produced documents. Id. The plaintiff claims that the "unexpected and sudden flurry of work on the other significant case was only partly within" the plaintiff's counsel's control. Id. at 5.

A district court may, for good cause, extend a party's time to respond to a motion; it may do so even after the time to do so has expired if the party's failure to respond was due to "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In determining whether a missed deadline should be excused, a court considers "all relevant circumstances surrounding the party's neglect." Bowman v. Korte, 962 F.3d 995, 998 (7th Cir. 2020). Such circumstances include "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 395 (1993); see United States v. Cates, 716 F.3d 445, 448 (7th Cir. 2013) ("*Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules.").

1.    *Prejudice*

The plaintiff says there is no prejudice to the defense because the sole paragraph in dispute is a discrete issue. That one paragraph, however, appears to have been the subject of dispute since October 2022 and has derailed the discovery in this case. According to the defendant, the document production has been on hold because the plaintiff refused to agree to the district's template order and instead insisted on a paragraph that would allow the plaintiff to give the defendant's confidential documents to attorneys in other cases. The delay has caused some prejudice to the defendant.

2.    *Length of the Delay/Impact on the Proceedings*

As to the length of delay, the defendant filed its motion to compel on December 6, 2022. Dkt. No. 28. The plaintiff's response was due December 27, 2022. The plaintiff's attorney said he learned of the motion on January 10, 2023, and instructed his co-counsel to draft a response the next day. Dkt. No. 32-2 at ¶11. While Attorney Rottier asserts that he quickly asked Attorney Tyndall for assistance once he learned of the missed deadline, both of the plaintiff's attorneys and two staff members in the office were notified of the motion for protective order. Dkt. No. 34 at ¶7; Dkt. No. 34-1 at 18. This factor also tips in favor of the defendant.

3.    *Reason for the Delay*

The plaintiff's attorney cited his busy work schedule. His co-counsel filed her own declaration explaining that she spent November and early December 2022 drafting a response to the petition for review and responding to multiple proposed *amicus* parties' briefs in connection with the petition for review filed in the Wisconsin Supreme Court. Dkt. No. 32-3 at ¶2. She then spent time responding to a summary judgment motion in Milwaukee County Circuit Court

5

and did not have time to work on anything else. Id. at ¶¶3, 4. Co-counsel then flew to Berlin and Serbia for the holidays and did not arrive home until January 6, 2023. Id. at ¶5. She adds that upon her return, she began preparing a response to a motion for summary judgment which was due in Wisconsin State Court on January 11, 2023. Id. at ¶6. She states that due to her other commitments, she would not have been able to draft the response to the defendant's motion until January 11, 2023. Id. at ¶7.

As the Seventh Circuit has explained, "neglect due to a busy schedule is generally not excusable." Miller v. Chi. Transit Authority, 20 F.4th 1148, 1153 (7th Cir. 2021). The plaintiff's attorney acknowledges that he ordinarily would have requested an extension, dkt. no. 32 at 2, which he would have needed because his co-counsel also was busy and/or travelling, but the "unexpected press of other case[s], combined with the year-end business requirements and holiday events" meant that he was unaware of the motion and "therefore did not request the extension," id. Attorneys are expected to track deadlines and multiple attorneys have appeared in this case. This factor weighs in favor of the defendant.

4. *Good faith*

The court does not doubt that the plaintiff's counsel missed the deadline while preoccupied with other matters. As the defendant points out, however, three other individuals in the plaintiff's counsel's law firm received service of the motion for protective order. Dkt. No. 32-3 at ¶7. The dispute first surfaced on October 24, 2022 when defendant informed the plaintiff that it would not agree to the paragraph in the proposed protective order and the plaintiff responded that the defendant had the burden of seeking the protective order. Dkt. No. 34 at ¶5. The defendant indicated that it would file a motion if the

6

parties could not reach an agreement. Id. at ¶6. This is not a situation where the plaintiff could not anticipate that a motion would be filed.

The balancing of the factors weighs against granting the extension. The court finds that the plaintiff has not shown excusable neglect and will deny the motion.

>    B.    Defendant's Motion for Protective Order

Except for paragraph (B)(1)(g) regarding mediation, the proposed protective order tracks the standard protective order approved by this district. The additional paragraph is consistent with the disclosures that are contemplated in paragraph (B)(1), which permit disclosure to employees of counsel, the parties, the court reporters, investigators or experts employed by the parties, deposition witnesses and those who already possess the information. The court will grant the defendant's motion for protective order and separately enter the defendant's proposed order on the docket.

## II. Motion to Compel Discovery from Plaintiff Ronald Scanlan (Dkt. No. 30)

Rule 37(a) allows a party to move to compel discovery responses if the opposing party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). The defendant seeks full and complete responses to its September 30, 2022 discovery requests, including responsive documents. Dkt. No. 30 at 1. According to the defendant, the plaintiff has failed to respond to nine of the twenty-one interrogatories and eight of the twenty-five requests for production. Id. at 2. The defendant adds that "many of the select few interrogatories and requests for production that Plaintiff bothered to respond to are incomplete and rely upon invalid objections." Id. The defendant says that plaintiff's counsel did not respond to defense counsel's first letter requesting a

meet-and-confer conference and, following a second letter, indicated that he would make no compromises with respect to the plaintiff's objections and would not produce any additional documents. Id. at 3.

The court separately addresses each of the objections below.

A.    Number of Interrogatories

The plaintiff maintains that the fifty-three interrogatories served by the defendant exceed the twenty-five interrogatory limit established by Fed. R. Civ. P. 33 and Civil Local Rule 22 (E.D. Wis.). Dkt. No. 38 at 1. For that reason, the plaintiff refuses to respond to nine interrogatories and the requests for production of documents that relate to the over-the-limit interrogatories. Id.

The defendant responds that the total number of interrogatories was twenty-one. Dkt. No. 30 at 2; Dkt. No. 31 at ¶3. Regardless, the defendant argues that the parties agreed in their Rule 26 report that objections would be filed within the court within ten business days of service (that language was proposed by the plaintiff), and the plaintiff filed no objection. Dkt. No. 30 at 2; Dkt. No. 31 at ¶4, 5.

Before turning to the number of interrogatories, the court looks at the language to which the parties agreed—again, drafted by the plaintiff—in their proposed discovery plan. The parties agreed that:

I.      Proposed Discovery Plans and Limitations

            * * *

b.      If and when a party serves Interrogatories in excess of the number allowed by Rule 33, the party upon whom they are served may file objections within 10 business days from the date of service asserting that the excess Interrogatories are not reasonable in light of the circumstances of the case; and Proponent shall have the objections set for hearing within 10 business days, or the Court's earliest workable time if more than 10 business days. If at a hearing the Court finds that the additional Interrogatories are reasonable in light of the total

8

circumstances of the case, the party served with the Interrogatories will have 20 days after the court rules to answer. If the party does not file objections as to the excess number of interrogatories within 10 business days, the responding party will respond in accordance with the Federal Rules.

Dkt. No. 21 at 2. When the court entered the scheduling order, it found the proposed plan acceptable and adopted the deadlines set by the parties.[1]

The defendant's attorney, John Laffey, filed a declaration averring that the plaintiff's counsel circulated the joint Rule 26(f) report agreed to by the parties and the plaintiff's draft included the language appearing in paragraph I(b). Dkt. No. 44. The draft appears at dkt. no. 44-2 and the court notes that Attorney Rottier signed the document on behalf of the plaintiff. Dkt. No. 44-2 at 8. Attorney Rottier didn't dispute that he drafted the language when responding to the motion to compel. In fact, he attached a letter that he sent to Attorney Laffey and others on October 5, 2022 stating that he did not agree to answering anything beyond the required twenty-five interrogatories. Dkt. No. 39-2. He did not, however, follow his own proposed procedure of bringing alleged excess interrogatories to the court's attention within ten days. Attorney Rottier now suggests that the very provision he proposed conflicts with the "letter and spirit" of Rules 33 and 37. Dkt. No. 38 at 9.

The court finds that the plaintiff waived his objections to the number of interrogatories in the requests.

---

[1] The court did not include in the scheduling order (Dkt. No. 22) the plaintiff's proposal that the proponent of any objection would "have the objections set for hearing within 10 business days;" the court, not the parties, decides when its calendar will accommodate hearings. But the plaintiff drafted the language allowing an objecting party to object within ten business days from the date of service of excess interrogatories. The plaintiff should not have made that proposal if he was not prepared to honor it.

9

B.    <u>Specific Interrogatories</u>

    1.    *Interrogatory No. 4*

Interrogatory No. 4 asks whether any statements concerning the incident were made to "any police officer, first responder, private investigator, insurance company agent or adjuster, or anyone else" and, if so, demands that the plaintiff provide (a) the name, address and employer of the person to whom the statement was made; (b) the date of each statement; (c) whether the statement was oral or written and, if oral, whether it was recorded; and (d) the name and address of the custodian(s) of each statement. Dkt. No. 31 at 10.

The plaintiff first objects to the term "statements" as vague and ambiguous and the term "anyone else" as overly broad, vague and ambiguous. Dkt. No. 38 at 11. The plaintiff then states:

> Information contained in medical records or police report [sic] can be categorized as statements, as that vague term is used in this interrogatory. Medical records will be provided pursuant to an executed authorization. The identity of individuals who plaintiff's counsel have obtained a written or recorded statement from have been included in Plaintiff's Initial Disclosure. The statements were recorded and plaintiff's counsel is the custodian of the statements.

Dkt. No. 31 at 35, 36. In opposition to the motion to compel, the plaintiff filed an amended response to the interrogatory "without waiving any objections" and asserted that the plaintiff has not given a statement about the incident. Dkt. No. 39-6 at 3.

In the reply brief, the defendant argues that the plaintiff failed to address whether statements have been made by anyone else and that the plaintiff should be compelled to provide a full, complete response "with sufficient specificity such that [the defendant] can identify by whom any responsive statements may have been made and identify the location and current custodians of those statements." Dkt. No. 43 at 8.

The interrogatory doesn't ask whether statements were made *by anyone else*. The plaintiff has responded, albeit late, that he has given no statements regarding the incident.

The court will deny the motion to compel with respect to Interrogatory No. 4 but notes that the plaintiff did not file an adequate response until the defendant filed a motion to compel.

### 2. *Interrogatory No. 5*

Interrogatory No. 5 asks the plaintiff to "[i]dentify each and every document that you allege supports your allegations in this matter, including without limitation the author of the document, the conclusions reached in the document, the circumstances under which the document was created, and the current location of the document." Dkt. No. 31 at 12.

The plaintiff responded as follows:

> Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad and unduly burdensome, specifically in regard to the phrase "each and every document you allege supports your allegations..." If defendant will state with specificity the document or type of document it seeks, then plaintiff will respond. However, the form of this interrogatory is so broad that the plaintiff cannot respond. Accordingly, plaintiff objects to further responding to this interrogatory or further supplementing this interrogatory but stands ready to provide specific responses with respect to specific requests."

Dkt. No. 38 at 12, 13.

In opposition to the motion to compel, the plaintiff argues that this is a "so-called blockbuster" interrogatory that requires a responding party to provide every fact in support of its claim. Id. at 13. The plaintiff cites Gudkovich v. City of Chicago, No. 1:17-CV-8714, 2022 WL 252716, *3 (N.D. Ill. Jan. 27, 2022), in support of its position that courts typically find such

11

interrogatories to be overly broad and unduly burdensome. The plaintiff says it will respond if the defendant agrees to identify specific areas of focus. Dkt. No. 38 at 13. The plaintiff adds that some of the interrogatory requests information protected by attorney work product doctrine. Id. at 14.

In the reply brief in support of the motion, the defendant emphasizes that the court in Gudkovich concluded that a request for "all documents supporting or contradicting a party's affirmative defense" was permissible. Dkt. No. 43 at 8. (citing Gudkovich, 2022 WL 252716, at *3). The defendant further cites Rule 26(a)(1)(ii), which requires parties to provide or identify "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Id. The defendant argues that identifying such information should not be unduly burdensome to the extent that the plaintiff should provide the information in the initial disclosures.

The court will deny the motion to compel a response to the interrogatory as written. The defendant didn't ask for all documents supporting the plaintiff's claims; it asked for all documents that support "the allegations in the matter." The plaintiff has a valid point that the defendant is asking for more than information underlying the claims or the material or principal facts. The defendant is asking the plaintiff for *all* documents that support *all* allegations. See CNH Industrial America LLC v. Jones Lange Lasalle Americas, Inc., No. 15-CV-981-JPS, 2016 WL 11513247, *3 (E.D. Wis. May 6, 2016) (framing a blockbuster objection as one that ask the party to "state the entire factual basis of its position" in the litigation).

12

The court will deny the motion to compel with respect to this interrogatory.

3.   *Interrogatory No. 6*

Interrogatory No. 6 asks the plaintiff to "[d]escribe the Incident, including without limitation the exact location of the Incident, your activities immediately prior to the Incident and any facts or circumstances you believe contributed to cause the Incident." Dkt. No. 31 at 11. After objecting to the phrase "any facts or circumstances" as vague, ambiguous and overly broad, the plaintiff says that he "was socializing with friends at the Homestead Suites, which had approximately six Adirondack style chairs available. [The plaintiff], in order to speak to one of his friends, placed a portion of his weight on the left arm of the Adirondack chair. The chair collapsed, causing him to strike the ground and suffer serious and permanent personal injuries, including paralysis." Dkt. No. 38 at 14-15. In opposition to the motion to compel, the plaintiff filed an amended response to the first set of interrogatories which stated, "Without waiving the above objections the location of the incident occurred on the grass near where the walkway meets the patio behind the Park House." Dkt. No. 39-6 at 4. The plaintiff included a photograph in response to amended Request No. 17, which shows the broken chair on the grass.

While the amended response includes more specific information about where the incident occurred, the plaintiff could be more specific about what he means when he says he was socializing with friends. The interrogatory asks for activities immediately prior to the incident. "Socializing" could mean many things and it is not unreasonable for the defendant to want specific information about the plaintiff's activities immediately before the chair collapsed.

13

The court will grant the motion to compel with respect to Interrogatory No. 6.

### 4.    *Interrogatory No. 7*

Interrogatory No. 7 asks the plaintiff to state whether he "had consumed any alcoholic beverages, narcotic or other drug within the twenty-four (24) hour period prior to the Incident" and if so, to "identify each such alcoholic beverage narcotic or other drug, the amount consumed, where consumed and the approximate time and date of consumption." Dkt. No. 31 at 11.

The plaintiff objects to this interrogatory as vague, overly broad and burdensome but indicates that he consumed "approximately 12 beers throughout the day." Dkt. No. 38 at 15. The plaintiff amended his response to say that he had two beers with lunch but does not recall the type of beers. Dkt. No. 39-6 at 4. He "golfed a round of 18" beginning at approximately 1:30 p.m. and consumed "some Busch Lite beers." Id. After golf, he drank Bud Light beers from that time until the time of the incident. Id. The plaintiff explains that he does not recall the exact times that the beers were consumed but recalls that the beers were "spaced out between the time he arrived back at the property at 6:00 p.m. and the time of the incident." Id.

The defendant still wants to know the "requisite *number*" of beers consumed at each of the intervals and whether the plaintiff consumed a narcotic or any other drug. Dkt. No. 43 at 10. While the court does not know whether the plaintiff can be more specific as to when he drank each of the twelve beers, the interrogatory asked for the information and the plaintiff should respond to the interrogatory. He also should clarify whether he had a narcotic or other drug.

The court will grant the motion with respect to Interrogatory No. 7.

14

5.    *Interrogatory No. 9*

Interrogatory No. 9 requests the identity of "each person whom you allege has knowledge regarding the incident and/or [the plaintiff's] alleged injuries or damages, and for each, to provide a specific description of their knowledge." Dkt. No. 31 at 11. The plaintiff objects to this interrogatory as vague, ambiguous, overly broad and unduly burdensome, specifically with respect to the phrase "each and every person." Dkt. No. 38 at 16. The plaintiff agreed to identify all witnesses in conformance with any scheduling order and said that witnesses known to date were in the plaintiff's initial disclosure. Id. The plaintiff also referred the defendant to his response to Interrogatory No. 3. Id. In the amended response, the plaintiff referred the defendant to the first supplemental Rule 26 Disclosure. Dkt. No. 39-6 at 5.

The initial disclosures identified the following individuals with knowledge: Mary Scanlan; Branigan Ruatti (daughter); Gregory Ruatti (son-in-law); Meghan Kiel (daughter); Adam Kiel (son-in-law); Michael Scanlan (brother), Patrick Scanlan (brother); James Scanlan (brother); Christine Rosenthal (sister); Bonnie Blick (sister); Julie Nelessen (sister); Maralee Herald (sister); Rebecca Conrad (sister); Gelcian Scanlan (mother); James and Debra Acker; Steve and Melissa Ann Gerber; Chuck and Monica Hooaza; and Kurtis and Kelly Sufka. Dkt. No. 38 at 17. The disclosures also mentioned that Brian Corbett, the plaintiff's manager at BMO Harris Bank, N.A., may have information regarding the plaintiff's injuries and has information regarding his economic loss. Id.

The plaintiff since has supplemented his initial response with additional names and a description of the subject area knowledge for the individuals. Dkt. No. 39 at ¶9; Dkt. No. 39-7. The defendant did not address this interrogatory in

the reply brief, which the court assumes means that the defendant is satisfied with the amended response.

The court will deny the motion to compel with respect to Interrogatory No. 9.

### 6. *Interrogatory No. 10*

Interrogatory No. 10 requests the name and address of the plaintiff's health care providers from whom he "secured care or treatment during the ten (10) years prior to the incident," including the name and address of each, the type of treatment provided and a statement of whether the care or treatment was continuing at the time of the incident. Dkt. No. 31 at 11. The plaintiff objected to the interrogatory as ambiguous, vague, overly broad and unduly burdensome, but identified the providers by name and address, and directed the defendant to the medical records for the dates and type of treatment. Dkt. No. 38 at 17-19. The plaintiff produced the records for all but two providers. Id. at 19. It does not appear that he has supplemented this response.

The plaintiff must provide a full and complete response to this interrogatory, including the information regarding the two providers he referenced, and identify the type of treatment provided and whether it was ongoing at the time of the incident.

The court will grant the motion to compel as to Interrogatory No. 10.

### C. Requests for Production

The plaintiff failed to answer Requests for Production 9 to 20, relating to Interrogatory Nos. 13 to 21, based on the same objections he made to Interrogatory Nos. 13 to 21 (over the limit). The court already has ruled that the plaintiff waived his objections to the number of interrogatories based on the language he proposed and agreed to in the Rule 26 report.

16

1. *Request for Production No. 3*

Request For Production No. 3 seeks "any and all documents, records, electronically stored information, or other tangible evidence identified in or related to your response to Interrogatory No. 2." Dkt. No. 31 at 15. Interrogatory No. 2 requested information about legal actions the plaintiff had been involved with in the past ten years. Id. at 10. In response to this Interrogatory No. 2, the plaintiff identified a single prior lawsuit—a divorce action pending in Brown County, Wisconsin—and provided the case number. Dkt. No. 31 at 34. The plaintiff objects to the document request on the grounds that it is "ambiguous, vague, overly broad, unduly burdensome and outside the scope of discovery as defined by Rule 26(b)(1)."

The court finds that the plaintiff appropriately responded to the interrogatory by identifying the divorce proceedings. As currently framed, the document request is overly broad. The defendant never explains why it would need "any and all documents, records, electronically stored information or other tangible evidence" from the plaintiff's ongoing divorce proceedings to defend against the plaintiff's claims. The defendant simply argues that documents related to the plaintiff's response to "Interrogatory No. 2 are relevant and discoverable in this action and [the defendant's] request for the same does not impose an unreasonable burden on Plaintiff." Dkt. No. 30 at 10.

The court will deny the motion to compel as to Request for Production No. 3.

2. *Request for Production No. 4*

Request For Production No. 4 requests "documents, records, electronically stored information or other tangible evidence identified in or related to" the plaintiff's response to Interrogatory No. 4. Dkt. No. 31 at 15. As

17

discussed above, Interrogatory No. 4 related to statements concerning the incident made to any police officer, first responder, private investigator, insurance company agent or adjuster, or anyone else. Id. at 10. The plaintiff objects for the same reasons he objected to Interrogatory No. 4—he says the request is vague, ambiguous and overly broad, specifically with regard to the phrases "identified in or related to," "any and all" and "statement." Dkt. No. 31 at 35. The plaintiff indicates that his medical records and first responder reports will be provided "pursuant to an executed authorization." Id. at 35-36.

The defendant says that it is entitled to all statements by the plaintiff concerning the incident, and that "this includes but is not limited to any and all conversations Plaintiff had with anyone about this incident and encompasses text messages, voicemails and e-mail communications." Dkt. No. 30 at 10. The plaintiff says that he already has told the defendant he has not given any formal statement or statements as defined in Rule 26(b)(3)(C). Dkt. No. 38 at 20.

The defendant did not the word "statement" in its discovery requests; however, the defendant included a definition for "communication" to include "transmissions of any nature between one or more persons and one or more other persons including, without limitation, formal or informal discussions, conversations, conferences, or meetings in person or by telephone, text, social media, computer application, smart phone app, or any other means of transmission of written, electronic, or verbal communications." Dkt. No. 31 at 8. The word "communication" better captures what the defendant appears to be seeking with this request. Dkt. No. 31 at 8. As for statements, the plaintiff has responded that he has given no statements.

The court will deny the motion to compel with respect to Request for Production No. 4.

   3.   *Request for Production No. 5*

Request for Production No. 5 seeks "any and all documents, records, electronically stored information, or other tangible evidence" related to plaintiff's response to Interrogatory No. 5. Dkt. No. 31 at 15. As discussed above, Interrogatory No. 5 asked for "each and every document that you allege supports your allegations in this matter." Id. at 11. The plaintiff asserts the same objections to the request as it did for Interrogatory No. 5—the request is vague, ambiguous, overly broad and unduly burdensome, specifically with regard to the phrases "identified in or related to" and "each and every document." Id. at 49. The plaintiff again states that he is "ready to provide specific responses to specific requests." Id. at 50.

The court denied the motion to compel a response to Interrogatory No. 5 and will deny the corresponding request for production of documents. "Any and all documents" relating to all allegations is overly broad.

   4.   *Request for Production No. 17*

Request for Production No. 17 requests any and all photographs taken by the plaintiff or anyone else during the plaintiff's stay at Homestead Suites. Dkt. No. 31 at 17. In his response, the plaintiff indicates he is "searching for responsive documents and will produce them if located." Id. at 52. The plaintiff since has produced a photograph of the subject chair in his amended response to the defendants' first interrogatories and requests for documents. Dkt. No. 31 at 21; Dkt. 39-6 at 8.

In its reply, the defendant says that it "strains credulity that, among all the witnesses to the events of that day, that there is but one solitary

19

photograph responsive to this Request." Dkt. No. 43 at 12. The plaintiff's counsel signed the amended response, certainly mindful of his obligations under Rule 11. Unless the defendant has some basis to believe that other photographs exist, the court will deny the motion to compel. If additional photographs surface, the defendant may seek sanctions.

5. *Request for Production No. 22*

Request for Production No. 22 asks the plaintiff to "produce any and all communications between you and any third-party regarding or related to the Incident." Dkt. No. 31 at 18. The plaintiff objects on the grounds of "vague, ambiguous, overly broad, and unduly burdensome." Id. at 53. The plaintiff's response further states, "[i]f defendant will state with specificity the document or type of document it seeks, then plaintiff will respond." Id.

The defendant argues that this request for communications between the plaintiff and any third-party is limited to the date of the incident on October 29, 2021 to the present. Dkt. No. 30 at 11. The plaintiff responds that there have been inquiries from families and friends regarding how he is doing but "the request sought information regarding the incident, not the resulting injuries." Dkt. No. 38 at 22. The plaintiff says his medical records are the best source of information and they have been produced. Id.

"Relating to" captures the injuries that resulted from the incident. In addition, the defendant asked for communications rather than statements. The plaintiff's responses to inquiries about how he is doing in his recovery would be relevant to this litigation.

The court will grant the defendant's motion to compel with respect to Request for Production No. 22.

6. *Request for Production No. 24*

Request for Production No. 24 requests any and all communications with Homestead Suites and/or its representatives. Dkt. No. 31 at 18. The plaintiff responded that he is "searching for responsive documents and will produce them if located." Id. at 54. The plaintiff amended his response in opposition to the motion to compel to include the Park House Vacation Home Rental Agreement and House Rules. Dkt. No. 39-6 at 6, 9-10.

In its reply, the defendant argues that "[i]t is clear this cannot be the only responsive document Plaintiff has in his possession and control." Dkt. No. 43 at 14. The defendant suggests that it is aware that communications exist between the plaintiff and Homestead Suites' insurers. Id. The court will give the plaintiff an opportunity to clarify whether any such documents exist.

7. *Request for Production No. 25*

Request for Production No. 25 seeks authorizations for a number of records including consent for disclosure of cell phone records, employment records, medical records, personal tax records, workers compensation records and social security information. Dkt. No. 31 at 18-19. The defendant focuses on the plaintiff's objections to the cellular and tax records. Dkt. No. 30 at 13. The plaintiff objects to the relevance of the cell phone records and argues the request for tax records is vague, overly broad and unduly burdensome. Dkt. No. 31 at 54. The plaintiff says he produced his W-2 forms for 2016 through 2021, which provide the loss of earnings information sought by the defendant. Dkt. No. 38 at 24. The plaintiff maintains that the cell phone records are not relevant and that the request is similar to a request for a forensic examination of his phone (which courts generally reject). Dkt. No. 38 at 24-26.

Case 2:22-cv-00586-PP   Filed 09/18/23   Page 21 of 23   Document 54

The plaintiff's response suggests that his tax returns have been provided to the defendant, which sufficiently responds to the request. The court has several concerns regarding the request for an authorization of disclosure of cell phone records. There is no limitation as to time and the defendant already is receiving any and all "communications" between the plaintiff and third parties about the incident. The court will not require the plaintiff to authorize disclosure of all cellular records.

## III. Request for Costs and Fees (Dkt. No. 30)

The defendant has requested an award of costs and fees in bringing the motion to compel. Dkt. No. 30 at 13. Rule 37 provides that the court must— after providing an opportunity to be heard—require the party whose conduct necessitated the motion to pay expenses, including fees. Fed. R. Civ. P. 37(a)(5)(A). But the court must not order costs and fees if the opposing party's nondisclosure was substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii). The court granted in part and denied in part the defendant's motion to compel. The court may issue any protective order authorized and, after providing an opportunity to be heard, apportion reasonable expenses. Fed. R. Civ. P. 37(a)(5)(C). Because some of the requests and interrogatories were overly broad and/or not proportional, the court will require the parties to bear their own costs for this discovery dispute.

## IV. Conclusion

The court **GRANTS** the defendant's motion for protective order. Dkt. No. 28. The court will separately docket the defendant's protective order.

The court **DENIES** the plaintiff's motion for extension of time to respond to motion for protective order. Dkt. No. 32.

22

The court **GRANTS IN PART** the defendant's motion to compel. Dkt. No. 30. The plaintiff must provide full and complete responses to Interrogatory Nos. 6, 7 and 10 and Request for Production Nos. 22 and 24. The court **DENIES WITHOUT PREJUDICE** the defendant's request for an award of fees and costs.

The court **ORDERS** the parties to meet and file a joint status report proposing new scheduling dates by the end of the day on **October 13, 2023**.

Dated in Milwaukee, Wisconsin this 18th day of September, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**