UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONALD SCANLAN,

        Plaintiff,

  v.

UNITED HEALTHCARE CORPORATION,

        Involuntary Plaintiff,

  v.

ADAMS MANUFACTURING COMPANY, *et al.*,

        Defendants,

and

UNITED HEALTHCARE CORPORATION,

        Cross-Claimant,

  v.

RONALD SCANLAN,

        Cross-Defendant.

Case No. 22-cv-586-pp

**ORDER GRANTING DEFENDANT'S CIVIL L. R. 7(H) EXPEDITED NONDISPOSITIVE MOTION TO COMPEL PRESERVATION OF PHYSICAL EVIDENCE (DKT. NO. 60)**

On May 17, 2022, plaintiff Ronald Scanlan filed a complaint alleging that an Adirondack-style chair manufactured by defendant Adams Manufacturing Company broke, resulting in catastrophic injuries. Dkt. No. 1. On February 27, 2024, the defendant filed an expedited, non-dispositive motion to compel

1

preservation of physical evidence and to prevent spoilage of physical evidence under this district's Civil Local Rule 7(h) Dkt. No. 60. The motion "seeks an order on an expedited basis to compel Plaintiff to provide the Subject Chair and all related physical evidence to The Madison Group [a third-party lab] for preservation and safeguarding until the parties are able to engage in joint testing." Id. at 3.

Under Rule 7(h), the deadline for the plaintiff to respond was March 6, 2024. See Civ. L. R. 7(h)(2) ("The respondent must file a memorandum in opposition to the motion within 7 days of service of the motion, unless otherwise ordered by the Court."); Federal Rule of Civil Procedure 6(a)(1) (detailing the process for computing period stated in days). The plaintiff has not filed a response.

## I. Background

The defendant's motion and the declaration of its attorney detail how the chair has been stored and describe the parties' communications regarding the chair's storage. Dkt. Nos. 60, 61. The defendant explains that, prior to September 2023, West Bend Mutual Insurance Company stored the chair in a secure facility. Dkt. No. 61 at ¶2. On September 29, 2023, West Bend sent an email to the parties inquiring about the continued preservation of the chair. Dkt. Nos. 61 at ¶4, 61-2 at 5. The same day, the plaintiff responded to West Bend, saying that he would take possession of the evidence. Dkt. Nos. 61 at ¶4, 61-2 at 5. Later the same day, the defendant also responded to West Bend, reiterating its preference to have the evidence transferred to a third-party lab.

2

Dkt. Nos. 61 at ¶4, 61-2 at 4. According to the defendant, "[n]either West Bend nor [the plaintiff's counsel] responded" to the defendant's email. Dkt. Nos. 61 at ¶4, 61-2 at 4. Instead, "[w]ithout the [defendant's] knowledge or consent, Plaintiff arranged with West Bend to pick up Subject Chair and related evidence on October 5, 2023." Dkt. Nos. 60 at 2.

The defendant stated that it did not learn that West Bend had released the chair to the plaintiff until two months later, in December 2023, when it sent a follow-up email to West Bend and the plaintiff. Dkt. Nos. 61 at ¶5, 61-2 at 3-4. At that time, the plaintiff stated, for the first time, that he "didn't agree with [the defendant's] suggestion[,]" dkt. no. 61-2 at 2, to "hous[e] the evidence with a third party lab[,]" dkt. no. 61-2 at 4. The plaintiff also stated that he had transported the chair to his counsel's office in Madison, Wisconsin. Dkt. Nos. 61 at ¶5, 61-2 at 1.

Shortly thereafter, defense counsel attended a mediation in an unrelated matter that was held at the plaintiff's counsel's office. Dkt. No. 61 at ¶6. While there, the defendant's counsel observed the chair "in an open and unsecured conference room[,]" which "was accessible to third parties" and "was being used as a breakout room for the mediation." Dkt. Nos. 61 at ¶7, 61-3. Defense counsel observed "[t]he Subject Chair [was] stacked on another exemplar chair and pieces of the Subject Chair [were] not properly separated or stored."[1] Dkt. Nos. 61 at ¶7, 61-3.

---

[1] The defendant provided photographs of the chair and the exemplar chairs in the conference room. Dkt. Nos. 61 at ¶7, 61-3.

3

A few days later, on January 3, 2024, the defendant sent the plaintiff a letter "outlining [the defendant's] concerns about Plaintiff taking possession of the Subject Chair and the condition in which it is currently being stored." Dkt. Nos. 61 at ¶8, 61-4. The defendant directed the plaintiff's attention to its draft inspection protocol, which the defendant first circulated in August 2023 and which "contemplated moving the Subject Chair to a mutually agreeable third-party lab." Dkt. Nos. 61 at ¶3, 61-1, 61-4. On February 15, 2024, the plaintiff responded, saying that he agreed with the inspection protocol, except for the proposed location.[2] Dkt. Nos. 61 at ¶9, 61-5. The plaintiff asked for the inspection to occur "at Applied Technical Services in Marrietta, Georgia" because that location "will allow greater flexibility for travel and overall availability for [the plaintiff's] consultant." Dkt. No. 61-5. The defendant expressed opposition to the Georgia location in a letter it sent to the plaintiff on February 21, 2024. Dkt. Nos. 61 at ¶10, 61-6. The defendant claimed that "[m]oving the chair thousands of miles for the sole convenience of [the plaintiff's] expert only increases the risk that the evidence will be further damaged, lost or otherwise compromised."[3] Dkt. No. 61-6 at 1. The defendant stated that "the proposed Marietta, Georgia location is not easily accessible and will complicate both travel and scheduling for all involved." Id. Based on these concerns, the defendant proposed that the "the subject chair and related

---

[2] The initial inspection protocol proposed that the inspection would occur at Materials Engineering, 47W605 I.C. Trail, Virgil, IL 60151. Dkt. No. 61-1 at 2.

[3] The defendant's declaration clarifies that Marietta, Georgia is "800 miles from where the Subject Chair is currently located[.]" Dkt. No. 61 at ¶9.

4

exemplars be immediately transferred to The Madison Group [in Madison, Wisconsin], which not only has the capability to perform all necessary testing but is also only seven miles from where the chair is currently located." Id. According to the defendant, as of the time of filing this motion the defendant had not received a response to its letter dated February 21, 2024. Dkt. No. 61 at ¶10.

## II. Legal Standard

"When addressing motions to compel, the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Smith v. Nexus RVs, LLC, 331 F.R.D. 491, 493 (N.D. Ind. 2019) (citing Fed. R. Civ. P. 26(c); Sattar v. Motorola, Inc., 138 F.3d 1164, 1171 (7th Cir. 1998); Gile v. United Airlines, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996)); see also Murillo v. Kohl's Corp., Case No. 16-CV-196, 2016 WL 4705550, at *3 (E.D. Wis. Sept. 8, 2016) ("The Court has broad discretion to grant or deny motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure."). "[I]n ruling on a motion to compel, 'a district court should independently determine the proper course of discovery based upon the arguments of the parties.'" Murillo, 2016 WL 4705550, at *3 (quoting Gile, 95 F.3d at 496).

"A party has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action." Cohn v. Guaranteed Rate, Inc., 318 F.R.D. 350, 354 (N.D. Ill. 2016) (internal quotation marks and citation omitted). That duty

5

requires a party "to preserve discovery materials in a reasonable manner[.]" DR Distributors, LLC v. 21 Century Smoking, Inc., 513 F. Supp. 3d 839, 930 (N.D. Ill. 2021).

### III. Analysis

The court finds that "the proper course of discovery" calls for the plaintiff "to transfer the Subject Chair and all related physical evidence in his possession, custody and control to The Madison Group." Dkt. No. 60 at 4. As the defendant notes, "both [the plaintiff]'s claims and [the defendant's] defenses hinge on the condition of the Subject Chair at the time of the alleged incident." Dkt. No. 60 at 3 (citing Wis. Stat. §§895.047(1), (3)). It is important for both parties for the chair to undergo a joint inspection, and for the chair to reach that inspection without additional damage.

Despite the defendant's attempts since at least August 2023 to solidify an inspection protocol, the parties have been unable to reach an agreement on the location of the inspection. Dkt. Nos. 61-1, 61-5, 61-6. This appears largely due to the plaintiff not addressing the defendant's proposed inspection protocol until February 15, 2024, dkt. no. 61-5 at 1, after several reminders from the defendant, dkt. nos. 61-2, 61-4. The delay is concerning, especially because the plaintiff elected to take possession of the chair from West Bend—"[w]ithout [the defendant's] knowledge or consent[,]" dkt. no. 60 at 2—because the plaintiff "didn't agree with [the defendant's] suggestion[,]" dkt. no. 61-2 at 2, to "hous[e] the evidence with a third party lab[,]" dkt. no. 61-2 at 4. Since independently taking possession of the chair, it appears the plaintiff has stored it in a

6

conference room, which also functions as a "breakout room" for mediations and is open to third parties. Dkt. No. 61 at ¶7. While the court doesn't know what effect being "stacked on another exemplar chair" may have on the chair, dkt. no. 61 at ¶7, it is concerning that the chair's primary protection appears to be a piece of paper taped to it that says "EVIDENCE – DO NOT TOUCH[,]" dkt. no. 61-3. It is more reasonable for the chair to go to a third-party lab.

The court also finds that the defendant's proposed inspection location—The Madison Group—is a reasonable place to conduct the joint inspection. While the court recognizes the plaintiff would like the inspection to occur at a lab in Marrietta, Georgia because that location "will allow greater flexibility for travel and overall availability for [the plaintiff's] consultant[,]" dkt. no. 61-5, that location is not reasonable when considering the current location of the chair or the location of most of the parties, dkt. no. 61-6. The court will order the plaintiff to transfer the chair and any related physical evidence to The Madison Group for preservation and safeguarding until the parties engage in the joint inspection.

### IV. Conclusion

The court **GRANTS** the defendant's Civil L. R. 7(h) expedited, non-dispositive motion to compel preservation of physical evidence and to prevent spoilage of physical evidence. Dkt. No. 60.

The court **ORDERS** the plaintiff to transfer the chair and all related physical evidence in his possession, custody and control to The Madison Group, 2615 Research Park Dr., Madison, WI 53711 by the end of the day on

7

**April 5, 2024**. The court **ORDERS** that the chair and all related physical evidence must remain at The Madison Group until the parties have completed joint destructive testing of that evidence. The court **ORDERS** that any costs associated with storage of the chair must be shared equally by the parties.

The court will issue a separate order addressing the defendant's unopposed[4] motion to enforce the court's discovery order and for sanctions against plaintiff (Dkt. No. 58).

Dated in Milwaukee, Wisconsin this 22nd day of March, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

[4] The defendant's motion was filed February 22, 2024. Dkt. No. 58. The plaintiff did not file a response by the March 14, 2024 deadline. See Civ. L. R. 7(b).